## TITUS *vs.* PHILLIPS.

1. A verdict for the defendant, in a suit at law brought against him by the complainant, for the price of a farm conveyed to him by the complainant, is conclusive proof in this court, that the defendant did not agree to pay that price, or any part of it, for the farm.

2. If a complainant, who alleges that a deed was delivered without his authority and contrary to his instructions, afterwards, with full knowledge that his instructions had been disobeyed by his agent, brings a suit at law for the price, and prosecutes it to final decision, this is an affirmance of the delivery by which he is bound; and he cannot afterwards maintain a suit in this court to set aside the delivery of the deed, on the ground that he was mistaken in another matter, the amount which the defendant had agreed to pay for the farm.

*Mr. B. Van Syckel,* for complainant.

The complainant filed this bill to compel the defendant to reconvey to him, a farm of one hundred and fifty-four acres of land, in the county of Mercer.

The complainant's claim to relief rests upon three distinct grounds, either of which will entitle him to the interference of a court of equity.

1. The complainant intended and understood that he was to receive from the defendant, for the property, the same price he had allowed to Andrew R. Titus for it, and he did not intend to part with his title, unless he received that equivalent.

2. The deed from the complainant was never legally delivered to the defendant.

A deed, to be valid, must go into the hands of the grantees with the consent of the grantors.

A sealed instrument, entrusted to a party with authority to deliver it to the grantee in case certain conditions are complied with, will not become a deed if delivered without compliance with such conditions. *Black* v. *Shreve,* 2 *Beas.* 455.

3. If the contract was originally, as the defendant claims

it was, viz. that the defendant should have the property for the encumbrances on it, the contract being by parol, the complainant had a right to change his mind, and did change it, and sent a due-bill for $2510 to be signed by defendant before the delivery of the deed.

The defendant had no right to retain the deed without signing and returning the due-bill to the complainant.

Prior to the filing of the bill in this case, the complainant instituted a suit in the Mercer Circuit Court, to recover from Phillips the sum of $2510, as the price of the farm, in which suit there was a verdict for the defendant.

It is now insisted that the complainant had his choice, to disavow the delivery of the deed and apply to equity to have the deed surrendered, or to affirm the delivery and bring suit for the price, and that he has chosen to affirm the delivery; and that if he brought suit in the circuit under a mistake, that mistake was only as to the fact whether defendant promised to pay the sum demanded; he was under no mistake as to the fact that the deed was delivered contrary to his instructions.

But this reasoning is not sound. It is true that, although the deed was delivered contrary to his orders, the complainant could afterwards ratify the delivery.

Was the institution of the suit in the circuit an assent to the delivery?

The complainant brought that suit upon the implied *assumpsit* of the defendant to pay the $2510. He said, by bringing that suit, if the defendant will pay me $2510, he shall have my property.

The defendant came forward and testified, that he understood he was to have the farm for nothing, and consequently there being no express *assumpsit* to pay $2510, the law could imply none, and the suit failed. And we are now told that our suit, in which we declared that the defendant might take our property for $2510, shall be construed into a declaration that he shall have it for nothing.

The pretence set up by the defendant in the circuit suit,

was a surprise to the complainant, and the inference now attempted to be drawn is untenable.

*Mr. Kingman,* for defendant.

THE CHANCELLOR.

The object of the bill of complaint in this case, is the reconveyance of a farm in Mercer county, conveyed by the complainant to the defendant, on the ground that the deed conveying the same was delivered without the authority, and contrary to the orders, of the complainant; the complainant offering to repay to the defendant the amount expended by him in improvements on the property, above the net income received from it since the conveyance.

The chief, if not the only controversy in the case is, whether the deed was delivered without the authority, and contrary to the orders, of the complainant. The farm, on the second day of February, 1861, belonged to Andrew R. Titus, who is the brother of the complainant, and the son-in-law of the defendant. A. R. Titus, who was a merchant in Trenton, at that time was much in debt, and embarrassed, and was largely indebted to the complainant, who was also liable, to some extent, as an accommodation endorser on his notes. The farm in question, which was subject to mortgages amounting, with the interest, to about eighty-eight hundred dollars, was, on the second day of February, 1861, conveyed by A. R. Titus and wife to the complainant, by deed dated and acknowledged on that day, and recorded on the sixth day of the month. The consideration recited in the deed was twelve thousand five hundred dollars. On the 28th day of March next ensuing, the complainant executed and acknowledged a deed to the defendant for the same property, dated on that day, in which the consideration recited was eleven thousand two hundred and seventy-seven dollars. This deed was handed by the complainant to A. R. Titus, to be delivered to the defendant, about the time of its date, and was by him delivered at that time; the complainant alleges that it was to be delivered only

VOL. III.    E

upon defendant's signing a note sent with the deed, for twenty-five hundred and ten dollars, which sum he insists was to be the consideration of the deed above the encumbrances; and that A. R. Titus delivered it, contrary to such instructions, without getting the note.

The complainant alleges that the consideration given by him to A. R. Titus for the farm, was twenty-five hundred and ten dollars, the amount due on three notes of A. R. Titus held by him, and a check of two hundred dollars of A. R. Titus held by F. Kingman, paid by complainant, over and above assuming eighty-eight hundred and seven dollars and fifty cents due on mortgages upon the farm; and that the defendant was to pay him for the property the amount that he had paid to A. R. Titus. And that the note sent with the deed to be given as the consideration, was to secure this sum above the encumbrances, which were assumed by the defendant.

The defendant contends that he agreed with the complainant to take a deed for the property, and that the only consideration was, that he should assume and pay the encumbrances; that the deed was delivered and accepted upon this understanding, and that A. R. Titus was authorized to deliver it, and did deliver it, without requiring that the note should be signed. Both parties admit, that after the delivery of the deed, the complainant requested the defendant to sign the note or to return the deed, and that the defendant offered to reconvey the property, if the complainant would refund the amount expended by him for improvements; which offer the complainant did not accept, believing that he could compel the defendant to pay the price he had agreed to pay, as alleged by the complainant.

The complainant brought an action for the consideration in the Mercer Circuit, in which the jury gave a verdict for the defendant. That verdict, it is not disputed, is conclusive evidence in this suit, that the defendant did not agree to pay anything above the amount of the encumbrances.

But the complainant correctly contends that it does not debar him from proving here, that he did not intend or agree to convey the farm for the encumbrances, or from proving that

he instructed his agent not to deliver the deed without the note; and that he may show in this court, that even if he had once agreed to convey, without other consideration, he had subsequently changed his mind, and declined to deliver the deed without the payment of the sum demanded above the encumbrances.

These positions are admitted, and the real issues in the case are, whether the complainant did authorize the deed to be delivered, only in case the note should be signed; and whether he has not, by his subsequent conduct, sanctioned and confirmed the delivery.

The question, whether the agreement between the defendant and complainant was to pay twenty-five hundred and ten dollars above the encumbrances, is important in this suit, only so far as it gives probability to the insistment of the complainant that he required the note as a condition of the delivery. That question is settled against the complainant, not only by the verdict in the suit at law, but by the weight of evidence in this cause. The responsive answer of the defendant, and the evidence of the defendant and A. R. Titus, are against him. The discussion in Kingman's office, proved by Kingman, A. R. Titus, and the defendant, as to the consideration to be inserted in the deed, is inconsistent with that being the agreement. Exhibit 1, of which 16 is a copy, does not sustain the complainant; he is clearly mistaken as to the time at which, and the object for which, it was made. It could not have been made until after the personal property, valued at twelve hundred and twenty-three dollars, had been transferred to the defendant, which was, as all agree, some time after the deed to the complainant; nor could it have been made to determine the consideration in that deed. If made to fix the consideration in the deed to the defendant, it shows that such consideration was not made up by adding twenty-five hundred and ten dollars to the amount due on the mortgages, but was made up by deducting the valuation of the personal property from the sum of twelve thousand five hundred dollars, the original consideration arbitrarily fixed for both.

And the weight of evidence is not only that the defendant did not agree to pay anything beyond the encumbrances, but that the complainant agreed to convey for the amount of the encumbrances; the answer and evidence of the defendant, and the evidence of A. R. Titus and Kingman, must outweigh the unsupported oath of the complainant.

If we assume it as established, that both parties had agreed that the conveyance should be for the amount of the encumbrances only, it will have great weight in the consideration of the testimony as to the instructions given by the complainant to A. R. Titus, about the delivery of the deed.

The allegation in the bill, as to the instructions to A. R. Titus, is in these words: "That your orator gave the said note to the said Andrew, together with the said deed, telling him to get the said Henry to sign the said due-bill, and to give him the said deed." In his testimony, the complainant says: "After I drew the note I gave it to Andrew, with the deed; I told him to get that executed by Mr. Phillips, and *then* he could leave him the deed." Although it is put in a much stronger form in his testimony than in the bill, yet if he had agreed to convey the premises for the encumbrances only, which is the assumption on which we are reasoning, and if he had been told by the defendant that *he* did not consider the premises worth more than the encumbrances, and would not give more for them, it seems strange that he should send a deed by the defendant's son-in-law, variant entirely and largely from his bargain, with the simple direction to get him to sign the due-bill, and *then* to deliver the deed. He would naturally have sent a message that he found his liabilities for Andrew were so great that he must have more for the farm; that he had changed his mind, and would not convey it upon the terms agreed; and he would have cautioned Andrew on no account to deliver the deed unless the note was signed. He would not have rested satisfied with sending a letter, on finding that the deed was delivered without the note, but must have concluded that it was retained with the idea of making him perform his first

bargain. These facts, and his whole conduct, are inconsistent with the theory of the complainant's counsel, that he had changed his mind and demanded new terms as the condition of delivering the deed.

On the fact that he gave Andrew instructions not to deliver the deed unless the note was signed, the only direct evidence we have is that of the complainant himself, and Andrew R. Titus; and on this point their evidence is contradictory. I do not consider that the complainant is entitled to less credit than Andrew because he is a party to the suit; Andrew is swearing for his father-in-law, in endeavoring to save a remnant of his property for himself and family; his position is no better than that of the complainant.

The conduct of the complainant is not such as to give aid to his story. No man, with such a mistake, would have been so passive as he was, by his own account, if we believe that, contradicted as it is both by Andrew and Mr. Phillips. He would not have been satisfied with writing a letter, if it was not responded to at once. The contents or date of his first letter are not very clearly shown, but he would not, in his letter of the 23d of April, so mildly have asked for a return of the deed, or that the note be signed; it would not have been, "I would like you," a gentle expression of preference; he would have insisted on his right, and urged Andrew's mistake or bad faith in delivering the deed.

Besides, the burthen of the proof in this case is on the complainant; he has his own oath only, contradicted by Andrew directly, and by the defendant, in all the circumstances with which he endeavors to fortify it.

If this farm is worth eleven thousand three hundred dollars, great injustice has been done the complainant by the defendant; he has evidently paid for his brother, some two thousand dollars more than he has realized from his property. It was the intention of the complainant and Andrew that the complainant should be saved, whatever other creditors might be left out in the cold; and between them it was right that he should be protected. The defendant ought not to

take from the complainant Andrew's property to keep for him, leaving his debt to complainant unpaid, unless by complainant's consent.

But this equity can have no influence on the decision in this case, except to support the evidence of the complainant and make it more probable. But from the whole evidence, taken together, it seems to me more probable that the complainant, in order to favor his brother and secure him a home, or in consideration of his assigning all his personal property to protect him, acceded to the defendant's terms; and that he intended to rely on his sense of justice, and on Andrew's influence, to get him to reimburse all that he should lose by Andrew; and that he sent the note, not to be signed as a condition of the delivery, but to try the experiment whether defendant could not be induced to sign it, so that in case of loss he might have in his own hands the means of reimbursement. It is clear that the note was intended not to be paid, except to make good any loss the complainant might sustain by his advances to, and endorsement for, Andrew.

Again, the complainant has assented to and confirmed the delivery by Andrew, by his suit at law. He knew that the deed was delivered contrary to his instructions. He had his choice, to disavow the delivery and apply to this court to have the deed delivered up, or to affirm the delivery, and bring suit for the price; he elected to affirm it, and has recognized it as his own delivery, and sued for the consideration, and he is not now at liberty to take the other course, having made and acted on his election. If he brought that suit under mistake, that mistake was only as to the fact whether defendant had promised to pay the sum demanded; he was under no mistake as to the alleged fact that the deed was delivered contrary to his instructions, and without authority.

I am of opinion that the complainant's bill should be dismissed with costs.*

Decree reversed, *post p.* 541.